### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

LUVICIE WILLIAMS                                                                  PLAINTIFF

V.                                        NO. 1:10CV00037 JTR

MICHAEL J. ASTRUE,                                                              DEFENDANT
Commissioner, Social
Security Administration

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff, Luvicie Williams, has appealed the final decision of the Commissioner of the Social Security Administration (SSA) denying her claim for Disability Insurance Benefits (DIB).  Both parties have submitted briefs (docket entries #10, #12).

Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

On August 28, 2006, Plaintiff filed an application for DIB, alleging an onset date of December 31, 2005.  (Tr. 103.)  She reported that she was unable to work due

to daily headaches and migraines about every three days, could not sleep or relax, and could not focus when she was having a migraine.  She said she missed a lot of work due to her headaches, quit because she was going to get fired, then found a job that was "more part-time."  (Tr. 122.)  She was forty-four years old at the time of her application, had completed high school, and had past work experience as a console operator and a nurse's aide.  (Tr. 103, 123, 126.)

After her claims were denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge (ALJ).  On June 3, 2008, the ALJ conducted an administrative hearing, at which Plaintiff and a vocational expert testified.  (Tr. 6-55.)

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process.  Step 1 involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i) & (b).  If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience.  *Id.*

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a "severe" impairment, *i.e.*, an impairment or combination of impairments which significantly limits the claimant's ability to perform basic work activities.  *Id.* § 404.1520(a)(4)(ii) & (c).  If not, benefits are denied.  *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment, which is presumed to be disabling. *Id.* § 404.1520(a)(4)(iii) & (d). If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has a sufficient residual functional capacity (RFC), despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.* § 404.1520(a)(4)(iv) & (f). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.* § 404.1520(a)(4)(v) & (g). If so, benefits are denied; if not, benefits are awarded. *Id.*

In her September 24, 2008 decision (Tr. 61-69), the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since December 31, 2005, her alleged onset date;[1] (2) had "severe" impairments of migraine headaches and neck and back pain; (3) did not have an impairment or combination of impairments that met or medically equaled a listed impairment; (4) had the RFC for a limited range of light work; (5) was not fully credible regarding the intensity, persistence and limiting

---

[1]The ALJ found that Plaintiff had acquired sufficient quarters of coverage to meet the insured status requirements through December 31, 2010. (Tr. 61, 63.)

effects of her symptoms; (6) was unable to perform any past relevant work; but (7) considering her age, education, work experience and RFC, and based on the testimony of the vocational expert, was able to perform other jobs that exist in significant numbers in the national economy, *i.e.*, light semi-skilled occupations such as an assembler of small products.  Thus, the ALJ concluded that Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner.  (Tr. 1-5.) Plaintiff then appealed the denial of benefits to this Court (docket entry #2).

## II.  Analysis

Plaintiff argues that the ALJ erred: (1) in disregarding the opinions of Plaintiff's treating physicians; (2) in "overstating" Plaintiff's RFC and assessing the credibility of her allegations; (3) in finding that her heart condition and hand numbness were not severe impairments; and (4) in formulating the hypothetical question she asked the vocational expert.  For the reasons discussed below, the Court concludes that Plaintiff's second and fourth claims warrant remand.  Therefore, they will be discussed first.

A.    Hypothetical Question.

At step five, the Commissioner bears the burden of showing that jobs exist in significant numbers which a person with the claimant's RFC and vocational factors

can perform.   20 C.F.R. § 404.1560(c)(2).   He can utilize the testimony of a vocational expert to satisfy this burden, *id.* § 404.1566(e); however, such testimony constitutes substantial evidence only when "based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008).

Medical records from May 2006 to December 2007 document that Plaintiff repeatedly sought treatment for at least two different types of headaches, including one type that went from the occipital area to the cervical spine and a migraine-type that was located on the right side above her ear.  (Tr. 181-86, 190-99, 204, 212.)  She reported to a consulting neurologist, Dr. Bruce D. Robbins, that she had experienced the headaches for about fourteen years and had tried several medications, with "no dramatic improvement."  (Tr. 182.)  An MRI showed a "fairly thick corpus callosum" and "a concerning amount of subarachnoid space, particularly in the frontal region."  (Tr. 199.)  Her headaches were described by Dr. Robbins as "chronic and atypical."  (Tr. 185.)   He wrote that her neurological evaluation was normal and that her condition probably represented a combination of vascular headaches and possible cervical spine disease.  (Tr. 185-86.)

Plaintiff testified at the hearing before the ALJ that she had eighteen to twenty migraines a month and threw up every day.  (Tr. 22, 27.)  She described the pain as

"throbbing" and "stabbing," with distorted vision, numbness in her face, and vomiting. (Tr. 141.) She said the pain lasted from a few hours to several days, and that sometimes her vision would go out when she was working and someone would have to pick her up from work. (Tr. 28, 141.)

The ALJ found that, despite her severe impairments of migraine headaches and neck/back pain, Plaintiff had the RFC for a limited range of light work, as follows:

> [W]hile the claimant can frequently lift and/or carry ten pounds, and occasionally twenty pounds, sit (with normal breaks) for a total of six hours in an eight hour work day, and stand and/or walk (with normal breaks) for a total of about six hours in an eight hour work day, **the claimant cannot climb scaffolds, ladders or ropes**, and she cannot operate a motor vehicle as part of her work. **The claimant should not be exposed to unprotected heights or dangerous equipment/ machines, temperature extremes, or extreme vibration. The claimant can only occasionally climb ramps and stair[s], stoop, bend, crouch, crawl, kneel, or balance.** The claimant must work where instructions are simple and non-complex; interpersonal contact with co-workers and the public is incidental to the work performed; the complexity of tasks is learned and performed by rote; the work is routine and repetitive; there are few variables; little judgment is required; and the supervision required is simple, direct and concrete.

(Tr. 64-65) (emphasis added).

In posing hypothetical questions to the vocational expert (Tr. 44, 52-54), the ALJ did not include the restrictions emphasized above, *i.e.*, the inability to climb scaffolds, ladders, or ropes; the need to not be exposed to unprotected heights, dangerous equipment or machines, temperature extremes, and extreme vibration; the

limitation to only occasional climbing of ramps and stairs, stooping, bending, crouching, crawling, kneeling and balancing.  The Commissioner asserts that no harmful error occurred because Plaintiff failed to explain how these limitations adversely affected her ability to perform the job cited by the vocational expert. Because the record contains evidence supporting some of the omitted restrictions, the Court cannot find that any deficiency in the hypothetical question was harmless.

Evidence in the record indicates that several of the conditions omitted from the hypothetical question could trigger headaches or nausea episodes, or exacerbate Plaintiff's pain.  She testified there were so many different triggers that she could not pinpoint just one.  (Tr. 27.)  She identified the following specific precipitating or aggravating factors: heat (Tr. 30); "anything blinking" (Tr. 30); "flashes of light" (Tr. 40);  bending over and lifting (Tr. 141); bright lights, strong scents, and loud noises (Tr. 141); standing/walking for more than an hour (Tr. 141); lights, noises, strong scents, lifting or moving things, or being tired or hungry  (Tr. 142); pollen, dust and gases (Tr. 146); lifting, "any kind of straining," or bending over, which put pressure on her head (Tr. 148); and sitting "too long," which made her head throb (Tr. 141, 150).  She also reported experiencing sudden loss of vision and distorted vision, as well as dizziness.  (Tr. 28, 141, 146, 183, 185.)

The ALJ did not mention any of the triggers and apparently considered at least

some of them to be credible by expressly including restrictions in her RFC on bending, temperature extremes, and exposure to unprotected heights and dangerous conditions.  Because the ALJ's hypothetical question did not incorporate all of the limitations expressed in the RFC assessment, the expert's responsive testimony based on that hypothetical does not constitute substantial evidence to support the Commissioner's step-five decision.  The case should be remanded for the ALJ to present a hypothetical question that reflects all of Plaintiff's impairments and restrictions encompassed by her RFC assessment.

B.      RFC Assessment/Credibility Determination.

Plaintiff asserts that the ALJ's RFC overstates her abilities because the ALJ: failed to take into account the frequency and unpredictability of her migraines; failed to take into account her statements that standing/walking for extended periods and lifting triggered her migraines; ignored evidence that exertion causes her to have shortness of breath; and dismissed without adequately developing the record regarding her hand numbness.  Plaintiff also argues that the analysis of the credibility of her subjective complaints was "seriously lacking."

In evaluating a claimant's RFC,[2] the ALJ must evaluate his or her credibility

---

[2]RFC is defined as "the most [the claimant] can still do" in a work setting "on a regular and continuing basis" despite his or her physical and mental limitations.  20 C.F.R. § 404.1545(a)(1), (b) & (c).

and take into account all relevant evidence. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). A claimant's subjective complaints may be discounted if they are inconsistent with the record as a whole. *Id.* at 801-02. The ALJ is in the best position to gauge credibility and is granted deference in that regard if his findings are adequately explained and supported. *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008). The ALJ is required to consider, in addition to the objective medical evidence and the claimant's prior work record, statements and observations made by the claimant, his or her medical providers and any others regarding (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medications, (5) non-medication treatments or other measures taken to alleviate pain and symptoms, and (6) functional limitations. 20 C.F.R. § 404.1529(c); *see Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984); SSR 96-7p, 1996 WL 374186, at *3, *5 (July 2, 1996).

Here, the ALJ stated that she had considered Plaintiff's statements about her symptoms in light of the objective medical evidence and "the entire case record," and in accordance with the applicable rules and regulations, citing § 404.1529 and SSR 96-7p. She found that, while Plaintiff's impairments reasonably could be expected to produce headaches and neck pain, her statements concerning the intensity,

persistence and limiting effects of these symptoms were "not credible" to the extent

they were inconsistent with the RFC assessment.   (Tr. 65-66.)

The ALJ's ensuing discussion did identify some evidence in the record

detracting from Plaintiff's credibility;[3] however, because the case is being remanded,

the ALJ should ensure that her decision adequately covers the following areas

identified by Plaintiff before discrediting her testimony.

The ALJ noted that Plaintiff "worked successfully for more than ten years after

the onset of the headaches." (Tr. 67.)  Other than this comment, the ALJ's decision

did not mention Plaintiff's work history, including the fact that she had worked

steadily since 1981, worked nineteen years for one employer and became a

supervisor, worked two jobs in 2004 and 2005, and earned $23,308 the last full year

she worked (2005).  (Tr. 12-18, 33-34, 108-09, 120.)  This type of consistent work

record enhances her credibility.  *See O'Donnell v. Barnhart*, 318 F.3d 811, 816-17

(8th Cir. 2003) (claimant's "fourteen-year record of responsible and well-paying jobs"

prior to the alleged onset of disability supported her credibility).

The ALJ's only reference to Plaintiff's limited daily activities was that her back

---

[3]The ALJ cited: Plaintiff's report that medication reduced her headaches; her
history of smoking and the neurologist's opinion that this contributed to her headaches; a
primarily normal cardiac work-up with no assessed restrictions on her activities; her
ability to work for ten years with her headaches and no medical evidence that her
symptoms had worsened; and inconsistencies in her physicians' opinions.  (Tr. 65-67.)

disorder and neck pain did not prevent her from "sustaining a reasonable walking pace ... or using the upper extremities effectively to be able to carry out activities of daily living." (Tr. 64.) Her disability reports and hearing testimony indicated that her daily activities were limited, not necessarily by neck/back pain, but by the unpredictable nature and severity of her headaches, including nausea, vision loss, and a multitude of triggers. (Tr. 29-33, 40, 44, 143-50.) As discussed above, the ALJ did not mention the precipitating or aggravating factors for Plaintiff's allegedly debilitating headaches. Furthermore, the ALJ only cited Plaintiff's report of "almost daily" headaches and "chronic neck pain," without discussing the frequency, unpredictability and intensity with which Plaintiff alleged her headaches to occur.

Finally, the ALJ did not mention the statements from Plaintiff's three witnesses, one of whom was a former co-worker. (Tr. 175-78.) Statements from lay persons regarding a claimant's condition must be considered when evaluating a claimant's subjective complaints. *Willcockson v. Astrue*, 540 F.3d 878, 880-81 (8th Cir. 2008) (ALJ not required to accept all lay testimony, but cannot "simply ... ignore it altogether").

As to Plaintiff's alleged shortness of breath and hand numbness, the ALJ's opinion shows that she appropriately considered and discounted the minimal objective medical evidence of these two alleged conditions in formulating Plaintiff's

RFC.[4]

    C.    <u>Treating Physicians' Opinions</u>.

Dr. Victor Chu, Plaintiff's family physician, wrote on April 30, 2008, that

Plaintiff was a patient of his who had severe migraine headaches and was "unable to

work due to the severity and frequence of these migraines." (Tr. 214.)[5] Opinions that

a claimant is "disabled" or "unable to work" concern issues reserved for the

Commissioner and are not the type of opinions which receive controlling weight.

*Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).   Giving such opinions

controlling weight would "in effect, confer upon the treating source the authority to

make" disability determinations. *Id.* (quoting SSR 96-5p, 1996 WL 374183, at *2

(July 2, 1996)).   The ALJ stated that she was giving "substantial weight" to the

---

    [4]Dr. Michael J. Camp, a cardiologist, saw Plaintiff for "chest discomfort," palpitations, and shortness of breath.  As noted by the ALJ, testing revealed a normal adenosine cardiolite, normal ejection fraction of 80%, and a normal adenosine stress result. (Tr. 66, 207-08.)  Also as noted by the ALJ, an echocardiogram showed an area of focal hypokinesis at the apex and mild mitral and tricuspid regurgitation, but normal sinus rhythm and ventricular functions.  (Tr. 64, 66, 209-10.)  At a follow-up visit with Dr. Camp, the only recommended treatment was medication for "better control of her blood pressure," risk modification through weight loss, and "possible" further testing through cardiac catherization.  (Tr. 213.)  Plaintiff reported that medication improved her chest pain and palpitations. (Tr. 203, 205, 211-13.)   The ALJ also noted Plaintiff's complaints of hand numbness, and Dr. Robbins' offer of nerve conduction studies, which apparently never occurred.  (Tr. 63-64, 65-66, 183, 185, 199.)

    [5]The record documents that Dr. Chu treated Plaintiff on two occasions for headaches, stress, depression, sleep problems, and fibromyalgia. (Tr. 181 [08-21-06]; 195 [02-06-07].)  Medication refills were approved by other personnel. (Tr. 192-94, 196-98.)

opinions of Plaintiff's treating and examining physicians, but correctly declined to give controlling weight to Dr. Chu's opinion that Plaintiff was unable to work. (Tr. 66.)

Dr. Robbins, a neurologist, saw Plaintiff for a consultation regarding her headaches on August 30, 2006, and as a follow-up on September 20, 2006. (Tr. 182-86, 199.) At the August visit, Plaintiff reported that the prescribed medication helped decrease the migraine-type headaches. (Tr. 182). In September, she again reported that medication had reduced her migraines but she was still having a "mild" occipital-type headache and some clicking in her neck. (Tr. 199.) On September 20, 2006, Dr. Robbins completed a form for the SSA, stating that Plaintiff had headaches in the frontal and top areas every day, occasionally required emergency room visits to obtain relief, was being treated with medication but it was "not working," and had "frequent [headaches] that limit work." (Tr. 179.)

The ALJ addressed Dr. Robbins' treatment records and stated that she was giving his opinions "substantial weight." (Tr. 65-66.) However, the ALJ properly discounted Dr. Robbins' statement that Plaintiff's medications were not working and that frequent headaches limited her ability to work because, as noted by the ALJ, these statements conflicted with his contemporaneous treatment records where she said her medications were reducing her migraine-type headaches and the remaining

headaches were "mild." (Tr. 66-67.) *See Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) (ALJ can properly discount a treating physician's opinion if it is inconsistent with the physician's own clinical treatment notes, or is inconsistent with and unsupported by the medical evidence as a whole).

The record thus shows that the ALJ gave appropriate consideration to the opinions of Dr. Chu and Dr. Robbins.

D.    Heart Condition/Hand Numbness.

Plaintiff argues that the ALJ erred in finding that neither Plaintiff's heart condition nor her hand numbness were severe impairments at step two of the sequential evaluation. This argument does not merit reversal because the ALJ did not terminate her analysis at step two, instead proceeding through the sequential evaluation and stating that she was considering "all of the claimant's impairments, including impairments that are not severe" in formulating Plaintiff's RFC. (Tr. 62.) This is further demonstrated by the ALJ's continued references – *after* making the step-two determination – to Plaintiff's complaints of hand numbness and cardiac-related symptoms and the related medical evidence. (Tr. 65-66.) *See Swartz v. Barnhart*, 188 F. App'x 361, 368 (6th Cir. 2008) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step

two is harmless).

### III. Conclusion

For the foregoing reasons, the Court concludes that substantial evidence does not support the Commissioner's step-five determination. On remand, the ALJ should present a hypothetical question that reflects all of Plaintiff's impairments and restrictions encompassed by her RFC assessment. Additionally, the ALJ should ensure that she considers all relevant factors, as set forth above, in evaluating the credibility of Plaintiff's complaints of debilitating impairments and functional limitations.

IT IS THEREFORE ORDERED THAT the Commissioner's decision is reversed and this matter is remanded to the Commissioner for further proceedings pursuant to "sentence four," within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED THIS 26th day of May, 2011.

_____
UNITED STATES MAGISTRATE JUDGE